**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA PANAMA CITY DIVISION**

**CURTIS E. LEWIS,**

**Plaintiff,**

**vs.** **CASE NO. 5:05CV244-MCR/AK**

**LINDA S. MCMAHON,**[1]
**Acting Commissioner of Social Security**

**Defendant.**

**_____________________________/**

**REPORT AND RECOMMENDATION**

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's applications for disability insurance benefits (DIB) under Title II of the Act.

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are **not** supported by substantial evidence; thus, the decision of the Commissioner should be reversed and this cause remanded for further proceedings.

---

[1] On January 20, 2007, Linda S. McMahon became the Acting Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Linda S. McMahon should be substituted, therefore, for the Commissioner Jo Anne B. Barnhart as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

## A. PROCEDURAL HISTORY

Plaintiff filed an application for DIB on March 29, 2002, alleging a disability onset date of October 1, 2001, because of ankylosing spondylitis, chronic lumbar discogenic and radicular pain, and chronic low back pain. Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who conducted a hearing on February 7, 2005, and entered an unfavorable decision on April 9, 2005. The Appeals Council denied Plaintiff's request for review, thus making the decision of the ALJ the final decision of the Commissioner. This action followed.

## B. FINDINGS OF THE ALJ

The ALJ found that Plaintiff had severe impairments of ankylosing spondylitis, chronic lumbar discogenic and radicular pain and chronic low back pain, but that these impairments did not meet any of the listings for impairments. ®. 16). The ALJ found that Plaintiff retains the residual functional capacity to lift up to 10 pounds occasionally and 5 pounds frequently; that he can stand or walk 2 hours in an 8 hour day; sit for 6 hours; and occasionally balance, stoop, kneel, crouch or crawl. ®. 17). The ALJ found that Plaintiff is restricted from performing any climbing or working around dangerous machinery or unprotected heights. Thus, the ALJ found that Plaintiff has the RFC to perform a full range of sedentary work. ®. 17). The ALJ further found that Plaintiff's testimony about his pain and limitation is not persuasive and notes that Plaintiff abruptly walked out of the hearing, as did his attorney, without finishing his testimony and without good cause. ®. 17). The vocational expert testified after they left and any cross

examination of him was deemed waived because of the attorney's abrupt and unwarranted departure. ®. 17). Despite the attorney's repeated requests, the ALJ found no need for ordering more consultative examinations. The ALJ did not find Dr. Gruber's opinion that Plaintiff is totally disabled persuasive because it is based primarily on the subjective complaints of Plaintiff and is inconsistent with the doctor's own progress notes. ®. 17). The ALJ also did not accept the opinion of Dr. Oksanen that Plaintiff was "unemployable," because it is not supported by his own objective findings which showed a normal neurological exam, good range of motion, and no muscle spasms. ®. 18). The ALJ also gave little credit to the opinion of Plaintiff's chiropractor. ®. 18). The ALJ's decision is further supported by the opinions of the state agency physicians, who as non-examining physicians, are not entitled to controlling weight, but they were of the opinion that Plaintiff could do light work. ®. 18). Utilizing the testimony of a vocational expert, the ALJ determined with his assistance that Plaintiff would be unable to return to his past relevant work as a pest control worker, truck driver, or house worker, but that given that he can perform a full range of sedentary work reduced by non-exertional limitations, including pain, the expert testified that there were numerous other jobs which he could perform such as telemarketer, surveillance systems monitor, charge account clerk, and food and beverage order clerk. ®. 19).

## C. ISSUES PRESENTED

Plaintiff argues that the ALJ failed to give proper weight to his testimony regarding the severity of his pain; that the Eleventh Circuit pain standard should be

applied to determine Plaintiff's residual functional capacity; and that the ALJ should obtain additional testimony from a vocational expert.

The government responds that the ALJ clearly articulated his reasons for finding Plaintiff's testimony regarding the severity of his pain and limitation as not credible and the ALJ also expressed his reasons for not crediting the opinions of Drs. Gruber and Oksanen with the weight usually accorded treating and examining physicians. Because the ALJ's credibility findings are fully supported by substantial evidence in the record, his decisions should be affirmed.

The issue thus presented is whether the Commissioner's decision that Claimant is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

**D. STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court. The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied. Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam). It is more than a scintilla, but less than a preponderance. Bloodsworth v. Heckler, 703

F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996). It must determine only if substantial evidence supports the findings of the Commissioner. See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam). Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an adequate basis for it to determine whether proper legal principles have been observed requires reversal. Id. (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary. Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work. If Plaintiff establishes that his impairment keeps him from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987). It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

**E. SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY**

Plaintiff's earnings record reflects regular, consistent earnings through 2001. ®. 82-83).

Plaintiff completed a pain survey and reports pain in his lower back and both legs throughout the day, especially upon bending, which prevents him from standing for long periods of time, prohibits most daily activities, and for which he takes two pain relievers, one of which is a narcotic. ®. 127-128). He states that the medication helps for about one hour and he also seeks relief from chiropractic care and therapy. ®. 128).

Medical records from the Florida Spine Institute covers a treatment time frame from March 6, 1998, through April 12, 2002. ®. 176-223). At his initial visit with neurologist Dr. Libreros-Cupido, Plaintiff reported a motor vehicle accident on January 3, 1997, when he was rear ended. ®. 219). He reported neck pain and lower back pain. He had another accident in 1991 when he was thrown from a vehicle, but his back pain at that time was improving until the 1997 accident. ®. 219). Dr. Gruber had two MRI's which were normal and a CT scan from April 8, 1997, showing facet arthritis in L5-S1 and "mild dextroscoliosis." ®. 219). On May 4, 1998, following an MRI and EMG study which revealed "some congenital stenosis, facet degenerative changes and some central prominence of the disc at L5-S1" and "an L-5-S1 radiculopathy." ®. 216). Plaintiff was working light duty at the time, which Dr. Zak agreed with, and he was referred to Dr. Gruber for epidural steroid injections. ®. 217). On July 13, 1998, Plaintiff reported no relief and additional injections were ordered by Dr. Libreros-Cupido

and use of a stimulator. ®. 214). On October 30, 1998, Dr. Gruber saw Plaintiff and noted "he continues to walk with a mildly antalgic gait. There is objective spasm in the paraspinal region, right greater than left, with flexion intolerance." ®. 205). He recommended a "second surgical opinion regarding the potential benefits of a discogram in consideration of potential l4-5 disc fusion." ®. 205). A note from Dr. Libreros-Cupido also on October 30, 1998, states "I discussed the case with Dr. Gruber and at this time we are recommending surgical consultation for consideration for a discogram and possible CT myelogram of the lumbosacral area, depending upon the surgical opinion." ®. 204). On December 4, 1998, Dr. Webb wrote:

> He is in mild distress and arises from a chair slowly. He has an antalgic gait to the right and has significant decreased extension with pain. The is 2+ palpable spasm of the right paraspinal musculature with 2+ tenderness. Straight leg raise is positive on the right at approximately 70 degrees. Cross straight leg raising is negative. Motor strength testing reveals 5/5 strength bilateral lower extremities. Deep tendon reflexes are 1/4 bilaterally at patella and 2/4 bilaterally at Achilles. There is no clonus or sensation deficits at this time. ®. 203).

An MRI dated December 28, 1998 shows:

> The intervertebral discs are normal in height and signal intensity with no herniation or fragmentation. Vertebral bodies are unremarkable without fractures or dislocations. Mild dextro-roto-scoliosis noted on the plain films. There are arthritic changes in the facet joints L4-5 andL5-S1 with hypertrophic changes bilaterally. Bilateral sacroilitis was noted on the plain films. No evidence of spinal stenosis. The conus is in normal position. ®. 202).

Additional tests were ordered, a diskogram and myelogram ®. 198-200), which showed "facet hypertrophy L2-3 through L5-S1 levels" and showed "at L4-5 there was very

similar low back pain similar to what he typically has. The diskogram appeared to be a degenerative disc. There was no leakage or annular tear." ®. 199).

A CT scan of his lumbar spine on March 16, 1999, shows "right lumbosacral spondyloarthrosis and mild bilateral spondyloarthrosis at the L4-L5 level without indication of lateral or central spinal canal stenosis. Normal CT of diskography at L3-L4 and L4-L5 is noted and there is no evidence of focal herniation of disc material upon the thecal sac or exiting nerve roots at these levels." ®. 155). At a follow up visit with Dr. Webb on March 17, 1999, the options were discussed for "continued conservative care, possibility of an annuloplasty and we even discussed the possibility of interbody fusion." ®. 197). Plaintiff was to consider his options and "get back to us when he decides what he wants to do." ®. 197).

In a long narrative report dated May 5, 1999, from Dr. Webb, he opined that "certainly Mr. Lewis has ongoing symptoms secondary to his injury which have been persistent and unrelated [sic] with conservative measures. However, surgical options may provide significant relief of those symptoms should he decide to proceed with surgery. If he does not, it would be expected that he would continue to have intermittent symptoms that may indeed progress, occasionally they will stabilize at a certain point." ®. 196). Plaintiff had not gotten back with Dr. Webb and no future treatment was planned until he decided whether to have surgery or not. ®. 196).

Plaintiff came in for a "re-check" in July 2001 with increasing pain and numbness in his legs and increasing pain in his low back. ®. 193). An updated MRI was obtained

which revealed "facet arthropathy at L2-L3 through L5-S1 and probable facet ankylosis at L3-L4, L4-L5, and L5-S1 levels. No evidence of disc herniation and spinal stenosis." ®. 194).

Referred again to Dr. Gruber on August 9, 2001, he was scheduled for more epidural injections, more tests, and surgical follow up with Dr. Webb. ®. 188). The results of the EMG were normal. ®. 186). An injection was given with some immediate relief, but no long term benefits. ®. 184). A discography was scheduled ®. 183), which revealed "annular tear at the L3-L4 level towards the left neural foramen with extravasation of the contrast in epidural space and tracking along left L3 nerve root. Probable ankylosing spondylosis." ®. 181). At his follow up visit on September 19, 2001, Dr. Gruber noted that the discogram revealed "panful [sic] discs at all levels with annular tear at the L3-L4 noted on the post discogram CT scanning. Based upon the results of his discogram, there is multilevel discogenic pain and, at this point, whether or note operative fusion is indicated, I will defer to Dr. Webb." ®. 180). "He continues to have prominent paraspinal tenderness with low-grade spasm. Restricted range of motion is noted in both flexion and extension planes." His treatment plan included: "At this point, I do believe he is temporarily totally disabled. I am going to take him off of work and have advised him to consider seeking employment in a sedentary duty occupation." ®. 180). A rheumatologist consult was suggested and at a visit on January 11, 2002, Dr. Gruber stated: "At this point it is my opinion that he is permanently totally disabled from occupation due to both range of motion limitation as

well as distracting/disabling levels of daily pain. Disability forms will be completed today." ®. 177). At the last visit in the record on April 12, 2002, Dr. Gruber noted that he continued to have "paraspinal spasm with positive right-sided notch tenderness...limitations of range of motion for both flexion and extension." ®. 176).

Dr. Owen Oksanen performed a consultative examination on Plaintiff on February 5, 2003, and noted "He clearly has difficulty moving around. Any increase in activity, increases his discomfort level. He has some difficulty even sitting quietly now." ®. 232). He noted that "he has a fairly believable physical exam...." ®. 232). He further stated:

> By observation, this gentleman can sit, as long as he is alleged to move around at times. He still has some minor discomfort doing that. Standing, walking, bending, lifting, and carrying are all limited by a moderate, movement related discomfort in his low back, radiating to his right leg, associated with this disease process. He has no difficulty handling objects. He can here [sic], speak, and understand without difficulty. Traveling is limited, as would be noted here. Cognitive function and social interaction/adaptation, are not limited." ®. 233).

The results of his neurologic exam were:

> Normal mental status. Minimal symmetrical reflexes. Reasonable strength & reported sensation, except for subjective numbness in his right lower leg diffusely. Limited gait with a mild limp. Limited balance. Cranial nerves 2-12 are intact. No other lateralizing deficits. Normal cerebellar function. Romberg–possibly positive–but limited by his back pain. ®. 234).

The results of the orthopedic exam were:

> No other acute joints are seen. Range of motion, except for the low back and hips is good. Strength elsewhere is 5/5. No instability or crepitus. Back exam shows no paravertebral muscle spasm. He has palpable tenderness throughout the low back. No deformity is seen. Straight leg

> raising is positive at 15-20 degrees --and probably negative when SLR's aren't actually done--such as with flexion of the knees. Distraction probably does not show malingering. Distal NVM function is intact. Grip strength appears intact. Repetitive hand function appears intact. Fine manipulation is satisfactory. ®. 234).

His assessment:

> Probable Ankylosing Spondylitis. No apparent pulmonary or ocular complications seen now. This is a progressive disease that is poorly responsive to medication. He does not now appear to be employable. This will only get worse. ®. 235).

A Physical Residual Functional Capacity Assessment completed on June 11, 2002, by a non-examining physician with a specialty in obstetrics and gynecology assessed him at a light level of work duty and noted that his opinion was significantly different from the treating physician's who found him totally disabled. ®. 224-231).

A Physical Residual Functional Capacity Assessment prepared by a non-examining physician dated February 20, 2003, assessed Plaintiff as able to lift up to 20 pounds, sit or walk 2 hours in an 8 hour day; sit six hours in an 8 hour day; with some limitation in his lower extremities which were noted as numbness in the right lower leg, limited gait and balance, mild limp. ®. 237-244). This physician [name undecipherable] noted that "symptoms appear credible and consistent with the objective medical findings and explained his disagreement with Dr. Gruber : "This opinion does not give consideration to the broad field of occupations within the national economy, and is not supported by the totality of the objective findings at this time." ®. 243). He explained his disagreement with Dr. Oksanen that while he "agree[s] that this is a progressive

disease, but current objective findings show upper extremities normal. Has some loss of mobility of spine. Legs normal." ®. 243).

Records from John Caldwell, a chiropractor, show treatment for back and leg pain from May 10, 2002, through November 10, 2004. ®. 245-273). Caldwell notes worsening pain, visible limp, difficulty arising from table, and permanent disability. ®. 250-251, 253, 255, 258, 262, 265, 267).

**F. SUMMARY OF THE ADMINISTRATIVE HEARING (HELD FEBRUARY 7, 2005)**

Plaintiff was represented at the hearing by present counsel, David Evans. ®. 276). Plaintiff was 35 years old at the time of the hearing and completed high school in special education classes. ®. 278, 281). He lives by himself in a house he bought several years earlier and his family helps him with his bills and food. ®. 284-286). All his previous work involved lifting things such as at Ace Hardware, where he worked for 14 ½ years, stocking shelves and moving appliances and delivering lumber. ®. 283, 287). His last job was at Sears Pest Control, where he also had to lift 25 to 30 pounds of tools and supplies. ®. 286). He had also been a door to door salesman for World MCI selling cell phones. ®. 293-294).

Plaintiff was using a cane at the hearing that he got from someone else after he started falling a lot. ®. 295). He cannot recall when he saw Dr. Grover [sic] last, and at the present time he was being treated by the chiropractor, John Caldwell, whom he sees once or twice a month. ®. 298-299). He pays for these visits out of the money his family gives him. ®. 299). Plaintiff testified that he could sit for an hour at a time,

sometimes not, he can stand for an hour or two if he could lean up against something, he could not walk a block, he could lift a gallon of milk, he can grasp his medication bottles, bend over to pick something only with difficulty, climb four or five steps, and could not do any overhead reaching. ®. 302-304). He rarely cooks, usually eating meals at his family's, and can do his own laundry and some cleaning, although his sister does the vacuuming. ®. 305). Plaintiff stated that he drives, takes care of his personal needs, and watches television sometimes. ®. 305-306).

Early in the hearing, counsel asked the ALJ for two consultative examinations, a neurologist and a rheumatologist, but the ALJ told him he would not likely going to send him for two examinations, he might want to choose just one. ®. 278). The ALJ noted that Plaintiff's had already had one consultative examination by Dr. Oksanen in February 2003. ®. 280). Counsel repeatedly asked for additional examinations, including a psychological examination since Plaintiff had been in special education classes, and then asked that the hearing be postponed until after Plaintiff had undergone these additional examinations. ®. 302, 306).

The attorney interrupted the ALJ several times for "leading" and "trying to show that he has skills he doesn't have." ®. 287). And "you're trying to trick him up...." ®. 291). "Again, you're leading, Judge, making the assumption that he can walk a block. You know why don't we just waive all testimony and let you make a decision based on the medical that's in the file." ®. 303). "Your Honor, we're going to, actually we're going to waive all testimony and let you make a decision." ®. 306). "If you're going to lead him

through....he's waiving all testimony." ®. 307). The ALJ asked counsel if he wanted to remain to question the vocational expert or was he leaving, and counsel replied he would question the VE after Plaintiff had been sent for additional consultative examinations. ®. 307). The ALJ told counsel that he was going to continue with the VE and asked if counsel was abandoning his case, which he replied that he was not, but he was leaving the hearing saying, "Let's go." ®. 307-308). **[During this exchange Plaintiff said nothing].**

The VE was then questioned and said at first that he needed more information about two of Plaintiff's past jobs, an installer, which was never discussed, and the door to door job, of which additional details were needed. ®. 311-314). Of course, Plaintiff and his attorney were not present at this time. The VE then testified that Plaintiff's past relevant work was between light, medium and heavy levels. ®. 313). The hypothetical posed to him included sit and stand for up to 6 hours, lift up to 20 pounds occasionally, 10 pounds frequently, no climbing, working at heights, or around machinery, and the expert said he could perform his past work as a peddler (door to door salesman). **[The hypothetical did not include any information about walking limitations]**. The VE also listed several other jobs in the national economy such as ticket seller, cashier, office helper, and gate guard. ®. 313-316).

A second hypothetical added the assumption that he could stand two hours, sit approximately six hours, and lift up to 10 pounds occasionally. ®. 316). The expert

added telemarketer, surveillance monitor, charge account clerk, food and beverage order clerk, and information clerk to the number of jobs he could perform. ®. 316-318).

**G. DISCUSSION**

a) Pain Standard

Pain and other subjective symptoms are treated by the regulations as symptoms of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, "unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." Accord 20 C.F.R. § 416.929. In Hand v. Heckler, 761 F.2d 1545, 1549 (11th Cir. 1986), the Eleventh Circuit adopted the following pain standard:

> There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

The Eleventh Circuit continues to follow the Hand test. Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991); Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991); Martin v. Railroad Retirement Bd., 935 F.2d 230, 233 (11th Cir. 1991). "While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." Elam, 921 F.2d at 1216. The court has held that "[p]ain alone can be disabling, even when its existence is unsupported by objective evidence." Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), citing Walker v.

Bowen, 826 F.2d 996, 1003 (11th Cir. 1987). Standing alone, however, a claimant's testimony of pain is not conclusive evidence of disability. Macia v. Bowen, 829 F.2d 1009, 1011 (11th Cir. 1987). If the Commissioner rejects a claimant's allegations of pain, he must articulate explicit and adequate reasons, and these reasons must be based on substantial evidence. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). The failure to articulate adequate reasons for discrediting pain testimony mandates that the testimony be accepted as true as a matter of law. Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

Under the standard set forth above, there must first be objective medical evidence of a condition that could reasonably be expected to cause pain. The record supports such a condition and the ALJ specifically found that Plaintiff has a severe back impairment. However, the AJ discredited Plaintiff's allegations of severe pain based on his personal observations of Plaintiff at the hearing and Plaintiff's demeanor at the hearing. ®. 17). Under the standard set forth above, the ALJ must clearly articulate his reasons for rejecting this testimony and these reasons must be supported by substantial evidence. The undersigned is of the opinion that the record does not support the ALJ's finding that Plaintiff was not credible, and therefore, Plaintiff's allegations must be accepted as true.

The ALJ stated that he "has considered the claimant's allegation that he is incapable of any work due to his credible medical impairments and finds such an allegation to be unpersuasive." ®. 17). He then cites the fact that Plaintiff sat for about

an hour without signs of pain or discomfort and that he used a cane which had been given to him by a friend. However, Plaintiff testified at the hearing that he could sit for an hour "sometimes," so there is nothing conflicting about his testimony and the ALJ's observations that should cause the ALJ to question his credibility on this basis. There is also no explanation by the ALJ for his reference to the cane as grounds for discrediting Plaintiff's allegations or for supporting his finding that Plaintiff could perform sedentary work.

The ALJ then refers to Plaintiff's "evasive" and "sarcastic" responses at the hearing, but does not cite to any specific transcript pages as supportive of this finding and a reading of the transcript does not support this finding. Of course, sarcasm is sometimes to difficult to "read." However, as noted above, there were several exchanges with *counsel* where *counsel* interrupted the ALJ's line of questioning, but Plaintiff did not appear to avoid the questioning on his own. The ALJ also noted that the "claimant abruptly and without justification walked out of the hearing room and abandoned his case. The claimant's attorney indicated his client would answer no further questions and he also left the hearing room simultaneously." ®. 17). This is also not supported by the record. Plaintiff does not appear from the record to have done or said anything affirmatively to the affect that he was walking out or refusing to answer any more questions. The record does not indicate that he walked out of the hearing first, as the ALJ's version implies. Actually, the record indicates that his attorney made the decision to end the hearing and then told the Plaintiff, "Let's go."

Thus, the record does not support the bases of the ALJ's decision regarding Plaintiff's credibility and under the case law set forth above, the Plaintiff's allegations of pain and limitation should be accepted as true as a matter of law. Plaintiff testified that he could "sometimes" sit for about an hour, stand for about an hour or two if he can lean on something, and is unable to walk one block. ®. 303). He is able to lift a gallon of milk or about ten pounds. ®. 303). There was no testimony taken at the hearing from Plaintiff as to his self-described levels of pain or how medication affects these levels, perhaps because of counsel's interruptions. There is a form in the record that Plaintiff completed stating that he has severe pain all day long that is unrelieved by medication. ®. 127-128). His complaints, as documented in the treatment notes of his treating physicians, also support severe, chronic pain in his back and legs, which is unrelieved by medication or other means. Thus, the above description of Plaintiff's pain and its resulting limitations should be accepted as true as a matter of law and treated as a non-exertional limitation for purposes of assessing his RFC and included in the hypothetical to a vocational expert.

b) Weight of Medical Evidence

In social security disability benefits cases, generally, the opinions of examining physicians are given more weight than non-examining physicians, the opinions of treating physicians are given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) are given more weight than non-specialists. See 20 CFR § 404.1527(d)(1)-(2), (5). The opinion of a non-

examining physician *alone* does not constitute substantial evidence to support the ALJ's decision. Swindle v. Sullivan, 914 F.2d 222 (11th Cir. 1990). Thus, when the ALJ rejects the opinions of an examining medical source in favor of a non-examining physician, he should obtain additional information. Johnson v. Barnhart, 138 Fed. Appx. 266 (11th Cir. 2005).

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). Nevertheless, the ALJ may discount the treating physician's opinion if good cause exists to do so. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supports a contrary finding," the opinion is "conclusory" or "so brief and conclusory that it lacks persuasive weight," the opinion is "inconsistent with [the treating physician's] own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991), (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)). If an ALJ rejects a treating physician's opinion, he must give explicit, adequate reasons for so doing, and failure to do so results in the opinion being deemed accepted as true as a matter of law.

MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992).

The ALJ rejected the opinion of Dr. Gruber because it was "based mostly on the subjective complaints of the claimant." ®. 17). This is not true. Numerous clinical, objective tests were obtained to support the opinion of Dr. Gruber–several MRI's, several EMG studies, a CT scan, a discogram, and a myelogram, as well as several range of motion tests.

The ALJ also rejected the opinion of Dr. Gruber because he found it "internally inconsistent with his own progress notes and is not supported by other objective medical findings contained in the hearing record." ®. 17). The ALJ does not explain in his decision precisely what is inconsistent in Dr. Gruber's notes, and in fact refers to Dr. Gruber's findings of restricted forward flexion, muscle spasm, tenderness, and references a CT scan revealing an annular tear. ®. 17-18). It is unclear what is not consistent in these notes with Dr. Gruber's opinion that Plaintiff was disabled. Further, it is not true that there are no other objective medical findings supportive of Gruber's findings. Dr. Oksanen, the consultative examiner for the administration, also found Plaintiff to be "unemployable," and agreed with Dr. Gruber's medical findings that the disease was progressive.

Thus, the ALJ's bases for rejecting the opinions of the treating physician are not supported by the record and based on the case law cited supra the opinion of Dr. Gruber should be accepted as true as a matter of law.

c) Hypothetical to the Vocational Expert

At the fifth step of the evaluation process, the ALJ must determine whether a Claimant, based on his residual functional capacity, age, education and work experience, can adjust to other work in the national economy. 20 C.F.R. § 404.1520(a)(4). The ALJ may make this determination by reliance upon the Medical Vocational Guidelines or by utilizing the services of a vocational expert. Phillips v. Barnhart, 357 F.3d 1232, 1239 (11th Cir. 2004). The Eleventh Circuit has "recognized that the grids may be used in lieu of vocational testimony on specific jobs if none of claimant's nonexertional impairments are so severe as to prevent a full range of employment at the designated level." Wolfe v. Chater, 86 F.3d at 1078, quoting Passopulos v. Sullivan, 976 F.2d 642, 648 (11th Cir. 1992). See also Foote v. Chater, 67 F.3d 1553, 1558 (11th Cir. 1995). "It is only when the claimant can clearly do unlimited types of work . . . that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy." Allen v. Sullivan, 880 F.2d 1200, 1202 (11th Cir. 1989) (citation omitted). Exclusive reliance upon the grids is not appropriate when claimant has a nonexertional impairment that significantly limits his basic work activities. Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990).

When the ALJ uses a vocational expert, he elicits responses from the expert by posing hypothetical questions to him or her. Phillips, 357 F.3d at 1240. In order for the

expert's testimony to constitute substantial evidence to support the ALJ's findings with regard to this point, the ALJ must pose a hypothetical which includes all of Claimant's impairments. Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999). The ALJ is only required to pose those limitations he finds severe in the hypothetical to the expert. Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985).

There are several problems noted with the hypothetical posed to the vocational expert. First, the ALJ did not include any parameters for Plaintiff's ability to walk in either of the two hypotheticals. Walking is one of the primary categories in the RFC assessment. Without any walking limitations posed to him, the vocational expert even opined that Plaintiff could likely work at one of his past relevant jobs as a "peddler" or door to door salesman. Second, as set forth above, Plaintiff's allegations of pain should be accepted as true and no consideration for any level of pain was included in either of the two hypotheticals posed to the vocational expert. Even without accepting Plaintiff's allegations of severity, all the medical evidence supported some level of pain, including the RFC's of the state agency non-examining physicians, who opined that Plaintiff's allegations of pain were consistent with his condition. Thus, the ALJ should have included some level of pain as a non-exertional factor in his ability to work.

The undersigned has reviewed the Listing of Impairments 1.04 to determine if this case could be remanded for payment of benefits, but finds that the medical evidence does not meet the listing for disorders of the spine because there is no evidence that there is a compromise of a nerve root or the spinal cord. However, this

cause should be remanded for consideration by a vocational expert of Plaintiff's ability to work, as compromised by his allegations of pain, accepted as true as a matter of law, and for the ALJ to afford the appropriate weight to the opinion of the treating physician. It is also suggested that upon remand, if the Appeals Council determines a *de novo* hearing is in order, a different Administrative Law Judge should hear the case given the problems that occurred between the ALJ and counsel for the Plaintiff.

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **REVERSED** and this cause **REMANDED** for further proceedings to include additional vocational expert testimony responsive to a hypothetical which includes limitations due to pain, as alleged by Plaintiff, and to accord controlling weight to the opinion of Plaintiff's treating physician.

At Gainesville, Florida, this 8th day of February, 2007.

**s/ A. KORNBLUM**
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**